1
2
3
4
5
6
7
8         IN THE UNITED STATES DISTRICT COURT

9         FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT MORRIS,

11            Plaintiff,                    No. 2:06-cv-2936 LKK KJN P

12       vs.

13   D. HICKISON, et al.,

14            Defendants.            FINDINGS & RECOMMENDATIONS

15   _____/

16   I.  Introduction

17            Plaintiff is a state prisoner proceeding without counsel with a civil rights action

18   pursuant to 42 U.S.C. § 1983.  On October 5, 2009, plaintiff moved for summary judgment

19   against the three remaining defendants in this action:  Hickison, Fry, and Herrera.  (Dkt. No. 75.)

20   On October 9, 2009, defendants Fry and Herrera filed a motion for summary judgment.  (Dkt. No

21   93.)  After carefully reviewing the record, the court recommends that plaintiff's motion be denied

22   and defendants' motion be granted.

23   II.  Allegations

24            This action is proceeding on the original complaint filed December 29, 2006, as to

25   defendants Hickison, Fry and Herrera, on plaintiff's retaliation claims against these three

26

1

1   defendants, and on plaintiff's Eighth Amendment claim against defendant Hickison.[1]

2          Plaintiff's complaint contains the following allegations:  Plaintiff alleges that on

3   May 18 or 19, 2005, defendant Hickison made sexually inappropriate comments to plaintiff at his

4   prison job.  Plaintiff also alleges that defendant rubbed and touched his back.  (Compl. at 5: 4-5;

5   15.)  On May 24, 2005, defendant Hickison started yelling at inmate workers to get the carts out

6   and take them to the building.  Plaintiff told defendant Hickison's supervisor that this task could

7   not be done.  Defendant Hickison allegedly told plaintiff that she would write him a chrono and

8   give him an "A" day.  She did not say that she was going to file a rules violation report against

9   him.

10         On May 24, 2005, defendant Hickison was informed that plaintiff was going to

11   file a staff complaint against her based on the sexual harassment.  On May 25, 2005, defendant

12   Hickison allegedly retaliated against plaintiff for his threat to file the staff complaint by

13   dismissing him from his job and writing a false rules violation report.  Plaintiff was later found

14   not guilty of the rules violation report.

15         Plaintiff alleges that on June 20, 2005, defendants Fry and Herrera allegedly

16   retaliated against plaintiff for pursuing his staff complaint against defendant Hickison by putting

17   him in administrative segregation.  On August 12, 2005, defendant Fry allegedly again retaliated

18   against plaintiff by placing a negative chrono in his C-file.  Plaintiff was later transferred to a

19   different prison.

20   III.  Defendants' Motion for Summary Judgment

21              Legal Standard for Summary Judgment

22         Summary judgment is appropriate when it is demonstrated that the standard set

23

24         [1]  The claims against the other defendants named in the complaint have been dismissed.
     By order filed August 20, 2008, plaintiff's due process, equal protection, FEHA and Title VII
25   claims were dismissed as to defendants Hickison, Fry and Herrera, and those defendants were
     ordered to file an answer addressing plaintiff's retaliation claims.  Id.  Defendant Hickison was
26   also ordered  to file an answer to plaintiff's Eighth Amendment claim.  Id.

1  forth in Federal Rule of Civil Procedure 56(c) is met.  "The judgment sought should be rendered

2  if . . . there is no genuine issue as to any material fact, and that the movant is entitled to judgment

3  as a matter of law."  Fed. R. Civ. P. 56(c).

4               Under summary judgment practice, the moving party

5               always bears the initial responsibility of informing the district court
                 of the basis for its motion, and identifying those portions of the

6               pleadings, depositions, answers to interrogatories, and admissions
                 on file, together with the affidavits, if any, which it believes

7               demonstrate the absence of a genuine issue of material fact.

8  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotations omitted).  "[W]here the

9  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

10  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

11  to interrogatories, and admissions on file.'"  Id. (citing Fed. R. Civ. P. 56(c).  Indeed, summary

12  judgment should be entered, after adequate time for discovery and upon motion, against a party

13  who fails to make a showing sufficient to establish the existence of an element essential to that

14  party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A]

15  complete failure of proof concerning an essential element of the nonmoving party's case

16  necessarily renders all other facts immaterial."  Id. at 323.  In such a circumstance, summary

17  judgment should be granted, "so long as whatever is before the district court demonstrates that

18  the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id.

19        If the moving party meets its initial responsibility, the burden then shifts to the

20  opposing party to establish that a genuine issue as to any material fact actually exists.  See

21  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

22  establish the existence of such a factual dispute, the opposing party may not rely upon the

23  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

24  form of affidavits, and/or admissible discovery material, in support of its contention that the

25  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

26  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

1436 (9th Cir. 1987), impliedly overruled in part on other grounds by Hollinger v. Titan Capital

Corp., 914 F.2d 1564, 1577-78 (9th Cir. 1990).

        In the endeavor to establish the existence of a factual dispute, the opposing party

need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary

judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

committee's note on 1963 amendments).

        In resolving a summary judgment motion, the court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts . . .  Where the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

        In this case, on April 15, 2008, the court advised plaintiff of the requirements for

1   opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Dkt. No. 13);

2   see Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035

3   (1999); and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

4          Undisputed Facts

5          The following undisputed facts ("UDF") are either not disputed by plaintiff, or

6   following the court's review of the evidence submitted, have been deemed undisputed:

7          1.  Defendant Herrera ("Herrera") held the position of Correctional Lieutenant at

8   CSP-Solano ("CSP-SOL") from February 2004 to June 2008.  (Herrera Decl. ¶ 1; Dkt. No. 97-1

9   at 2.)

10          2.  Herrera's work responsibilities included, but were not limited to, supervising

11   inmates and custodial staff, and maintaining the safety and security of inmates, staff, and the

12   institution.  He was also responsible for completing California Department of Corrections and

13   Rehabilitation ("CDCR") paperwork, known as a CDC 114-D, Administrative Segregation Unit

14   Placement Notice, when an inmate was placed in administrative segregation ("ad seg").  (Herrera

15   Decl. ¶ 2; Dkt. No. 97-1 at 2.)

16          3.  Herrera was and is familiar with California Code of Regulations, Title 15,

17   § 3335, which provides the guidelines for placing an inmate in ad seg.  (Herrera Decl. ¶ 3.)

18          4.  When an inmate's presence in an institution's general inmate population

19   presents an immediate threat to the safety of the inmate or others, endangers institution security,

20   or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal

21   activity, the inmate shall be immediately removed from general population and placed in ad seg.

22   Cal. Code Regs., tit. 15, § 3335(a).  (Herrera Decl. ¶ 4.)

23          5.  Herrera did not promulgate § 3335.  (Herrera Decl. ¶ 5; Dkt. No. 97-1 at 2.)

24          6.  On June 20, 2005, Herrera was advised for the first time that plaintiff had

25   made allegations of staff misconduct.  (Herrera Decl. ¶ 7.)

26          7.  Herrera then followed § 3335(a), and completed a form CDC 114-D

(Administrative Segregation Unit Placement Notice) for plaintiff. (Herrera Decl. ¶ 9, Ex. A; Dkt. No. 97-1 at 2.)

8.  The June 20, 2005 CDC 114-D explained that plaintiff was being re-housed in ad seg on June 20, 2005, in order to protect the integrity of an investigation into plaintiff's allegations.  (Herrera Decl. ¶ 10; Dkt. No. 97-1 at 2.)

9.  Inmate Lancaster, who testified on plaintiff's behalf at the June 20, 2005 CDC 115[2] hearing, was also placed in ad seg.  (Dkt. No. 1 at 44.)

10.  Plaintiff was deemed a threat to the safety and security of CSP-SOL, and he was to remain in ad seg pending an administrative review as to plaintiff's appropriate program and housing needs.  (Herrera Decl. ¶ 11.)

11.  In addition, under California Code of Regulations, Title 15, § 3272, plaintiff's custody level was increased to "Maximum," in order to facilitate the move.  (Herrera Decl. ¶ 12; Dkt. No. 97-1 at 2.)

12.  Defendant Herrera did not and does not know Defendant Hickison.  (Herrera Decl. ¶ 15; Dkt. No. 97-1 at 3.)

13.  Defendant Herrera has no knowledge about plaintiff's allegations against Defendant Hickison, other than what has been claimed in the present lawsuit.  (Herrera Decl. ¶ 16.)

14.  Defendant Herrera was not involved in, and had no control over, the CDC 115 hearing on June 20, 2005.  (Herrera Decl. ¶ 17; Dkt. No. 97-1 at 3.)

15.  Defendant Herrera's initial placement of plaintiff in ad seg on June 20, 2005, concluded his involvement with plaintiff.  (Herrera Decl. ¶ 18.)

---

[2]  "CDC 115" refers to the CDC 115 form prison officials use to cite inmates with a rules violation.  (See Dkt. 1 at 23.)  The CDC 115 is entitled Rules Violation Report, just as the report issued after the hearing on the CDC 115 is entitled Rules Violation Report.  (See Dkt. 1 at 18.)  To avoid confusion, this court refers to the CDC 115 issued against plaintiff on May 25, 2005, as the "CDC 115."  (Dkt. 1 at 23.)  The court refers to the Rules Violation Report, issued following the hearing on June 20, 2005, as the "RVR."  (Dkt. 1 at 18.)

16. Defendant Herrera was not involved in plaintiff's continued retention in ad seg after June 20, 2005.  (Herrera Decl. ¶ 19.)

17. Defendant Herrera was not involved in plaintiff's Institutional Classification Committee ("ICC") hearings.  (Herrera Decl. ¶ 20; Dkt. No. 97-1 at 3.)

18. Defendant Herrera was not involved in, and did not prepare any chronos regarding plaintiff.  (Herrera Decl. ¶ 21; Dkt. No. 97-1 at 3.)

19. Defendant Herrera was not involved in, and had no control over, any decisions made by the ICC regarding plaintiff's transfer.  (Herrera Decl. ¶ 22; Dkt. No. 97-1 at 3.)

20. Defendant Herrera did not investigate, respond to, or participate in plaintiff's CDC 602 grievance (appeal log number SOL 05-1528), regarding Hickison.  (Herrera Decl. ¶ 23.)

21. Defendant Herrera did not participate in any investigation regarding plaintiff's allegations against Hickison because such investigations are handled by CSP-SOL's Investigative Service Unit ("ISU").  (Herrera Decl. ¶ 24.)

22. Herrera signed the CDC 114-D placement notice on June 20, 2005.

23. Defendant Fry held the position of Facility Captain at CSP-SOL, and her job duties included administrative responsibility for a general population facility, supervision of the custody staff, and maintaining the safety and security of inmates, staff, and the institution.  (Fry Decl. ¶ 2; Dkt. No. 97-1 at 3.)

24. Fry's work duties also included reviews of administrative segregation orders, participating in the ICC, and preparing chronos for inmate files as needed.  (Fry Decl. ¶ 3; Dkt. No. 97-1 at 3.)

25. Fry was and is familiar with California Code of Regulations, Title 15, §§ 3335 (Administrative Segregation), 3336 (Segregation Order), 3337 (Review of Segregation Order), 3338 (Hearing on Segregated Housing Order) and 3339 (Release from Administrative

Segregation and Retention in Administrative Segregation), which provisions establish the policies and procedures regarding Segregation Housing at all California Prisons. (Fry Decl. ¶ 4; Dkt. No. 97-1 at 3.)

26.   On the first work day following an inmate's placement in ad seg, designated staff at not less than the level of Correctional Captain will review the order portion of the form CDC 114-D.  Cal. Code Regs., tit. 15, § 3337.  As Facility Captain, Fry was qualified under § 3337 to perform this review of the administrative segregation order.  (Fry Decl. ¶ 6; Dkt. No. 97-1 at 3.)

27.   If retention in ad seg is approved at such a review, the following determinations are also to be made:

a.   The appropriate assignment of staff assistance, if such assistance is deemed necessary by the official initiating the form CDC 114-D.  If the inmate's caseworker is not an appropriate assignment because of the caseworker's schedule, an alternate staff assistance assignment will be made.  The inmate will be notified in writing of any change in the assignment of staff assistance.  An inmate may also decline to accept the assignment of his or her caseworker or the first person assigned.  In such cases a different staff member will be assigned to assist the inmate.

b.   The inmate's desire to call witnesses or submit other documentary evidence.  If the inmate requests the presence of witnesses or submission of documentary evidence at a classification hearing on the reason or need for retention in segregated housing, an investigative employee will be assigned to the case.  A request to call witnesses and the names of witnesses must be submitted in writing by the inmate.

c.   Whether the inmate has waived the 72-hour preparation period in which a classification hearing cannot be held, as indicated on the form CDC 114-D, or if the inmate desires additional time to prepare for a classification hearing.  A request and the reason for needing additional time to prepare for a hearing must be submitted in writing, by the inmate.  In

the absence of the inmate's waiver of the 72-hour preparation period, or an approved request for additional preparation time, a classification hearing cannot be held earlier than 72 hours after the inmate's placement in segregated housing, but will be held as soon thereafter as is practical.

        d.   The most appropriate date and time for a classification hearing based upon the determination arrived at under (a), (b) and (c) above, and the time limitations prescribed in § 3338.  Cal. Code Regs., tit. 15, § 3337.  (Fry Decl. ¶ 7; Dkt. No. 97-1 at 3.)

        28.   Plaintiff's allegations against Hickison were disclosed at his CDC 115 hearing on June 20, 2005.  (Fry Decl. ¶ 8; Compl. at 8.)

        29.   The CDC 115 hearing was the first time that Fry learned plaintiff had made allegations of staff misconduct.  (Fry Decl. ¶ 9.)

        30.   Fry had no knowledge that Hickison had submitted a CDC 115 concerning plaintiff.  (Fry Decl. ¶ 10.)

        31.   Fry was not involved in, and did not have control over, the CDC 115 hearing on June 20, 2005.  (Fry Decl. ¶ 11; Dkt. No. 97-1 at 3.)

        32.   Fry reviewed plaintiff's CDC Form 114-D on June 21, 2005, which was one day after plaintiff's initial placement in ad seg, and was within the time limit established in § 3337.  (Fry Decl. ¶¶ 12, 18, Ex. A.)

        33.   The CDC 114-D explained that plaintiff was being re-housed in ad seg on June 20, 2005, in order to protect the integrity of an investigation into plaintiff's allegations. Based on this information, plaintiff was deemed a threat to the safety and security of CSP-SOL. Plaintiff was to remain in ad seg pending an Administrative Review to ascertain plaintiff's appropriate program and housing needs.  (Fry Decl. ¶ 14; Dkt. No. 97-1 at 3.)

        34.   In addition, under California Code of Regulations, Title 15, § 3272, plaintiff's custody level was increased to "Maximum," in order to facilitate the move.  (Fry Decl. ¶ 15; Dkt. No. 97-1 at 3.)

        35.   Fry also reviewed the CDC 114-D placement notice and signed it on June 21,

1   2005.

2           36.   During Fry's review of plaintiff's CDC 114-D, she interviewed plaintiff to

3   determine if assignment of staff assistance or an investigative employee was necessary, or if

4   plaintiff desired one.  Plaintiff did not request assignment of staff assistance or an investigative

5   employee, and Fry determined it was not necessary because plaintiff was literate, fluent in

6   English and free of any mental incapacity that would affect his ability to understand the

7   proceedings or to represent himself.  (Fry Decl. ¶ 19; Dkt. No. 97-1 at 3.)

8           37.   During Fry's review, plaintiff did not request any witnesses for the

9   classification hearing.  Fry determined that under California Code of Regulations, Title 15,

10  § 3335, plaintiff needed to be retained in ad seg pending ICC review.  Further, plaintiff's

11  retention was necessary because plaintiff's release to the general population would jeopardize the

12  integrity of the investigation into his allegation of staff misconduct, and to protect the

13  institution's safety and security.  (Fry Decl. ¶¶ 20, 21.)

14          38.   Inmate Lancaster was also retained in ad seg, at "Maximum" custody status,

15  until transferred to an alternate institution.  (Dkt. No. 1 at 45.)

16          39.   On June 23, 2005, the ICC convened for an initial ASU ("Administrative

17  Segregation Unit") review.  (Fry Decl. ¶ 24. Ex. B; Dkt. No. 97-1 at 3.)

18          40.   The policies and procedures regarding inmate discipline, including Rules

19  Violations, Classification Committees, disciplinary hearings, and hearing procedures which Fry

20  was required to follow, are contained in California Code of Regulations., Title 15, §§ 3310

21  through 3326.  (Fry Decl. ¶ 25; Dkt. No. 97-1 at 3.)

22          41.   Captain Fry was part of the ICC, which also included Correctional Counselor

23  II Baughman, Acting Chief Deputy Warden Johns, Dr. Fleischman, ASU Sergeant Terrazas, and

24  Security & Investigation Correctional Officer Ballesteros.  (Fry Decl. ¶ 26; Dkt. No. 97-1 at 3.)

25          42.   Plaintiff was also present at the ICC hearing on June 23, 2005.  (Fry Decl.

26  ¶ 27; Dkt. No. 97-1 at 3.)

1    43.  Plaintiff did not request witnesses for the purpose of the June 23, 2005

2    review.  (Fry Decl. ¶ 29; Dkt. No. 97-1 at 4.)

3    44.  At the time of that ICC review hearing, it was noted that, according to

4    plaintiff's CDC 114-D, he was placed in ad seg on June 20, 2005, as a result of his making

5    allegations of staff misconduct, and therefore housed in ad seg to protect the integrity of the

6    ongoing investigation.  The case was under investigation by Security and Investigation ("S&I"), a

7    special team of staff at each institution assigned to investigate such claims.  (Fry Decl. ¶ 30; Dkt.

8    No. 97-1 at 4.)

9    45.  Based upon ICC's review of plaintiff's CDC 114-D, his central file,

10   disciplinaries, and a thorough discussion with plaintiff, the ICC elected to retain plaintiff in ad

11   seg pending investigation, to continue "Maximum" custody level, and to refer the matter to a

12   Classification Staff Representative ("CSR"), with a recommendation of 90-day ad seg extension.

13   (Fry Decl. ¶ 31; Dkt. No. 97-1 at 4.)

14   46.  At the conclusion of the ICC hearing on June 23, 2005, plaintiff was informed

15   of his appeal rights with regard to the committee's action and he acknowledged his

16   understanding and agreement.  (Fry Decl. ¶ 35; Dkt. No. 97-1 at 4.)

17   47.  Acting Chief Deputy Warden Johns was the chairperson of the ICC on June

18   23, 2005.  (Fry Decl. ¶ 32; ; Dkt. No. 97-1 at 4.)

19   48.  As a matter of course, if the members of the ICC express any disagreement

20   regarding the committee's findings or recommendations, Mr. Johns, as the Chairperson, had the

21   authority to make final decisions.  (Fry Decl. ¶ 33; Dkt. No. 97-1 at 4.)

22   49.  The members of the ICC had no disagreement over their decision to retain

23   plaintiff in ad seg pending investigation, to continue "Maximum" custody level, or to refer the

24   matter to a CSR with recommendation of 90-day ad seg extension.  (Fry Decl. ¶ 34; Dkt. No. 97-

25   1 at 4.)

26   50.  Correctional Counselor II Baughman, as Recorder, and Johns, as Chairperson,

11

of the ICC hearing, both signed the June 23, 2005 form CDC 128-G.  (Fry Decl. ¶ 36; Dkt. No. 97-1 at 4.)

51.  On or around August 12, 2005, Fry prepared an informational chrono (CDC 128-B) regarding plaintiff, which stated:

> You [plaintiff] were placed in the Administrative Segregation Unit on 6/20/05 after you made allegations of staff misconduct by your work supervisor, Ms. Hickison.  Specifically, you claimed that she had attempted to coerce an over-familiar relationship with you. The investigation confirmed that your allegations were complete fabrications, and that you had solicited other inmates to lie about Ms. Hickison's actions to substantiate your allegations.  Your actions negatively affected an employee's work assignment and the institution's ability to provide routine services to the inmate population by that unit. If successful, your false allegations could have resulted in the employee's termination of employment.  A thorough review of all of the documentation revealed that there was insufficient information to support a finding of guilt in a disciplinary hearing, therefore no charges will be filed against you. However, the information is sufficiently credible to demonstrate your willingness to significantly jeopardize Ms. Hickison's welfare.  Ms. Hickison has appropriately continued to work in her assignment in the Level II Clothing Distribution and your release to the general population at CSP-SOL would necessitate your contact with her.  For this reason, your release to the general population at CSP-Solano poses a danger to the safety and welfare of an employee.  You were retained in the ASU at maximum custody status, until your transfer to an alternate institution.

(Fry Decl. ¶ 37, Ex. C; Dkt. No. 97-1 at 4.)

52.  In preparing the August 12, 2005 information chrono for plaintiff, Fry relied on the CDC 114-D, plaintiff's central file, and disciplinaries.  (Fry Decl. ¶ 38.)

53.  Fry also relied on confidential material,[3] as permitted by California Code of Regulations, Title 15, § 3321.  The confidential material was obtained by CSP-SOL's S&I, and corroborated through investigations.  (Fry Decl. ¶ 39.)

---

[3]  Plaintiff disputes this statement, claiming that Fry "failed to provide discovery on this issue."  (Dkt. No. 97-1 at 4.)  However, plaintiff failed to identify the specific discovery request and response that he alleges Fry failed to address.  Moreover, plaintiff did not dispute that he was provided form CDC 1030 (Confidential Information Disclosure Form), on August 8, 2005.  (Fry Decl. ¶ 40, Ex. D; Dkt. No. 97-1 at 4.)

54. Under California Code of Regulations, Title 15, § 3321, a CDC 1030 (Confidential Information Disclosure Form), prepared by Correctional Officer McGriff, was provided to plaintiff on August 8, 2005. (Fry Decl. ¶ 40, Ex. D; Dkt. No. 97-1 at 4.)

55. The CDCR 1030 stated that plaintiff was identified by a confidential source as making false allegations of staff misconduct. (Fry Decl. ¶ 41.)

56. In accordance with Fry's usual custom and practice, in determining whether to file a CDC 115 against plaintiff for making false allegations against Ms. Hickison, she conducted a case conference with her supervisor, Acting Deputy Chief Warden Johns, to obtain his input. (Fry Decl. ¶ 43; Dkt. No. 97-1 at 4.)

57. On Friday, August 12, 2005, Lieutenant Parks completed a CDC 114-D regarding plaintiff. (Fry Decl. ¶ 44, Ex. E; Dkt. No. 97-1 at 4.)

58. The CDC 114-D stated that plaintiff had been initially placed in ad seg on June 20, 2005, after making allegations of misconduct by his work supervisor, Hickison. The investigation confirmed that plaintiff's allegations were completely fabricated, but insufficient information was gathered to support a finding of guilt in a disciplinary hearing. (Fry Decl. ¶ 45; Dkt. No. 97-1 at 4.)

59. The CDC 114-D further noted that Hickison had appropriately continued to work in her assignment at the Level II Clothing Distribution, and therefore, plaintiff's release to the general population at CSP-SOL jeopardized her welfare. Based on this finding, plaintiff was being retained in ad seg and would remain at "Maximum" custody status until his transfer to an alternate institution. (Fry Decl. ¶ 46; Dkt. No. 97-1 at 4.)

60. Fry completed her review of this CDC 114-D by August 15, 2005 (Monday), which was the next working day. Her review determined that plaintiff needed to be retained by ICC due to the danger plaintiff posed to staff had he been released to the general population at CSP-SOL. (Fry Decl. ¶ 47.)

61. Plaintiff refused to sign this CDC 114-D. (Fry Decl. ¶ 48; Dkt. No. 97-1 at

1  4.)

2      62.  On August 17, 2005, the ICC again convened for program review.  (Fry Decl.

3  ¶ 49, Ex F; Dkt. No. 97-1 at 5.)

4      63.  Fry was part of the ICC, which also included Correctional Counselor II

5  Baughman, Acting Chief Deputy Warden Crawford, Dr. Cleary, ASU Sergeant Terrazas, and

6  S&I Sergeant Melgoza.  (Fry Decl. ¶ 50; Dkt. No. 97-1 at 5.)

7      64.  Plaintiff was present at the ICC hearing on August 17, 2005, and he had

8  received 72-hour notice of this hearing.  (Fry Decl. ¶¶ 51, 52; Dkt. No. 97-1 at 5.)

9      65.  At the August 17, 2005 hearing, it was noted that, according to plaintiff's

10 CDC 114-D, he was placed in ad seg on June 20, 2005, as a result of his making allegations of

11 staff misconduct, and he was therefore housed in ad seg to protect the integrity of the ongoing

12 investigation.  The investigation had been completed at that time.  A new CDC 114-D was issued

13 on August 12, 2005, for ad seg retention pending transfer in order to ensure staff safety.  (Fry

14 Decl. ¶ 53; Dkt. No. 97-1 at 5.)

15     66.  Based upon ICC's review of plaintiff's CDC 114-D, central file,

16 disciplinaries, and a thorough discussion with plaintiff, the ICC elected to retain plaintiff in ad

17 seg pending a Board of Prison Terms ("BPT") hearing, and subsequent transfer.  The ICC also

18 determined to refer the matter to CSR with recommendation of 90-day ad seg extension. (Fry

19 Decl. ¶ 54.)

20     67.  At the conclusion of the ICC hearing on August 17, 2005, plaintiff was

21 informed of his appeal rights with regard to the committee's action and he acknowledged his

22 understanding and agreement.  (Fry Decl. ¶ 57; Dkt. No. 97-1 at 5.)

23     68.  CCII Baughman, as Recorder, and Acting Chief Deputy Warden Crawford, as

24 Chairperson, of the ICC hearing, both signed the August 17, 2005 CDC 128-G.  (Fry Decl. ¶¶ 55,

25 58; Dkt. No. 97-1 at 5.)

26     69.  None of the ICC members expressed any disagreement regarding the

14

committee's findings or recommendations, and accordingly, Ms. Crawford was not called upon to exercise her authority to make a final decision.  (Fry Decl. ¶ 56; Dkt. No. 97-1 at 5.)

70.  Fry did not promulgate the California Code of Regulations, including Title 15, which governs Adult Institutions, Programs, and Parole.  Sections 3310-3326 (Inmate Discipline), 3335 (Administrative Segregation), 3336 (Segregation Order), 3337 (Review of Segregation Order), 3338 (Hearing on Segregated Housing Order), 3339 (Release from Administrative Segregation and Retention in Administrative Segregation), and 3379 (Inmate Transfers), are all contained within Title 15, and Fry was and is required to follow these policies and procedures.  (Fry Decl. ¶ 59.)

71.  Fry did not and does not know Hickison.  (Fry Decl. ¶ 60.)

72.  Fry did not investigate, respond to, or participate in plaintiff's grievance (appeal log number SOL 05-1528) against Hickison.  (Fry Decl. ¶ 61; Dkt. No. 78 at ¶18.)

73.  Fry did not participate in any investigation regarding plaintiff's allegations against Hickison.  Such investigations are handled by CSP-SOL's Investigative Service Unit.  (Fry Decl. ¶ 62.)

74.  The ICC's decisions regarding plaintiff at the June 23, 2005, and August 17, 2005 hearings, were made collectively by the entire committee.  (Fry Decl. ¶¶ 63, 66; Dkt. No. 97-1 at 5.)

75.  As one of the members of the ICC, Fry did not have the authority to decide the committee's recommendations and actions.  (Fry Decl. ¶ 64.)

76.  The chairperson of the ICC has the authority to make a final decision if the members of the ICC disagree on the recommendations and actions.  (Fry Decl. ¶ 65; Dkt. No. 97-1 at 5.)

77.  After the ICC hearing on August 17, 2005, Fry's involvement with plaintiff regarding his placement or retention in ad seg, and classification was concluded.  (Fry Decl. ¶ 67.)

15

78. Under California Code of Regulations, Title 15, § 3379, inmate transfers require ICC action and endorsement by a Classification Staff Representative ("CSR"). (Fry Decl. ¶ 68; Dkt. No. 97-1 at 5.)

79. Neither Fry's participation and conduct in the ICC hearings on June 23, 2005, and August 17, 2005, nor her decisions as part of the ICC regarding plaintiff's classification and placement recommendations, were based on retaliation, evil motive or evil intent. (Fry Decl. ¶ 71.)

Disputed Facts

1. Whether defendant Hickison retaliated against plaintiff by recommending plaintiff be fired from his job. Plaintiff argues that on May 25, 2002, defendant Hickison fired him from his job in retaliation for his threat to file a grievance against her for allegedly sexually harassing him. Plaintiff contends the "not guilty" finding at the CDC 115 hearing supports his theory of retaliation. Hickison contends plaintiff was fired from his job for disobeying an order and becoming loud and argumentative rather than for retaliatory reasons.

2. Plaintiff argues adherence to § 3335 is discretionary. Defendants contend it is mandatory.

3. Defendants Fry and Herrera contend they first became aware of plaintiff's allegations of staff misconduct on June 20, 2005. (Dkt. 93 at 3; Herrera Decl. ¶ 7; Fry Decl. ¶¶ 8, 9.) Plaintiff contends he did not raise any allegations concerning staff misconduct on June 20, 2005. Plaintiff also states in his complaint that hearing officer Nuehring informed Facility Captain Fry that plaintiff would be pursuing his staff complaint on Hickison. (Compl. at 11:11-12.)

4. Plaintiff also contends that after dinner on June 20, 2005, plaintiff and inmate Lancaster were called to the custody office where Herrera asked plaintiff if he was going to pursue his grievance (staff complaint) against Hickison, to which plaintiff answered "yes." (Pl.'s October 5, 2009 Decl ¶ 24.) Plaintiff contends Herrera stated, "then by order of Captain Fry, you

16

and inmate Lancaster are being placed in administrative segregation." (Id.) Plaintiff included

these statements in his statement of undisputed facts in support of his motion for summary

judgment. (Dkt. 98-2 at 14.) Defendants objected to "these purported facts on the grounds that

they are unintelligible, compound, irrelevant, lack foundation, constitute hearsay, and call for

speculation." (Id.) Defendants conceded that it is undisputed that Herrera processed the

paperwork to place plaintiff in ad seg. (Id.) However, defendant Herrera did not address the

events occurring after dinner on June 20, 2005 in his declaration. (Dkt. No. 93-2 at 2-3.)

In plaintiff's complaint, plaintiff states the following:

> Thereafter, on the evening of June 20, 2005, Plaintiff and Inmate
> Lancaster E-96955 [were] placed into Ad/Seg (hole) by Facility
> Captain N. Fry and Lieutenant J.L. Herrera states in part:

> > ". . . you made allegations of Staff misconduct,
> > therefore you are being rehoused in Ad/Seg . . .
> > Based on this information you are deemed a threat
> > to the safety and security of this institution. . . "
> > (See Exhibit F.)

(Compl. at 11.) Plaintiff's Exhibit F is a copy of the CDC 114-D Administrative Segregation

Unit Placement Notice signed by Herrera on June 20, 2005, and reviewed and signed by

defendant Fry on June 21, 2005. (Id.)

5. Defendant Herrera declares his action in placing plaintiff in ad seg was not

based on retaliation, evil motive or evil intent. (Herrera Decl. ¶ 26.) Plaintiff contends Herrera's

action was in retaliation for his grievance against Hickison.

6. Defendant Fry declares that her action in placing plaintiff in ad seg on June 20,

2005, was required under California Code of Regulations, Title 15 § 3335, and continuing

plaintiff's placement in ad seg was solely based on California Code of Regulations, Title 15

§§ 3335-37. Plaintiff contends Fry's actions were done in retaliation for plaintiff's grievance

against Hickison and based on false information.

////

////

1          Analysis

2               Retaliation

3               Within the prison context, a viable claim of First Amendment
               retaliation entails five basic elements:  (1) an assertion that a
4               state actor took some adverse action against an inmate (2) because
               of (3) that prisoner's protected conduct, and that such action
5               (4) chilled the inmate's exercise of his First Amendment rights,
               [footnote 5 omitted] and (5) the action did not reasonably advance a
6               legitimate correctional goal.

7    Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  An allegation of "harm that is more

8    than minimal" from the alleged retaliation can satisfy the fourth element without an allegation of

9    a chilling effect.  See Rhodes at 567, 568 n.11.

10              To establish a First Amendment retaliation claim, a plaintiff must show that the

11   type of activity he was engaged in was constitutionally protected, that the protected conduct was

12   a substantial or motivating factor for the alleged retaliatory action and that the retaliatory action

13   advanced no legitimate penological interest.  Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997)

14   (retaliatory issuance of false rules violation and subsequent finding of guilt).  Retaliatory motive

15   may be shown by the timing of the allegedly retaliatory act and inconsistency with previous

16   actions, as well as direct evidence.  Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003)

17   (retaliatory validation as a gang member for filing grievances).

18              A prisoner must at least allege that he suffered harm, since harm that is more than

19   minimal will almost always have a chilling effect.  Rhodes, 408 F.3d at 567-68 n.11; see Gomez

20   v. Vernon, 255 F.3d 1118, 1127-28 (9th Cir. 2001) (prisoner alleged injury by claiming he had to

21   quit his law library job in the face of repeated threats by defendants to transfer him because of his

22   complaints about the administration of the library).  A chilling of a prisoner's First Amendment

23   rights is sufficient.  Rhodes, 408 F.3d at 569.

24              Once such a showing is made, the burden shifts to the defendant prison officials to

25   show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to

26   serve a legitimate penological purpose.  See Schroeder v. McDonald, 55 F.3d 454, 461-62 (9th

1    Cir. 1995) (defendants had qualified immunity for their decision to transfer prisoner to preserve

2    internal order and discipline and maintain institutional security).

3            Retaliation claims brought by prisoners must be evaluated in light of concerns

4    over "excessive judicial involvement in day-to-day prison management, which 'often squander[s]

5    judicial resources with little offsetting benefit to anyone.'" Pratt v. Rowland, 65 F.3d 802, 807

6    (9th Cir. 1995) (internal citation omitted).

7            In the instant case, plaintiff claims that defendants Fry and Herrera  retaliated

8    against him for filing a grievance against defendant Hickison.  Therefore, he has met the first

9    prong of a retaliation claim.  Plaintiff must also show that his protected conduct (filing of a

10   grievance) was a substantial or motivating factor behind the alleged retaliatory conduct (removal

11   from work assignment, placement in ad seg, continued placement in ad seg, and placing chrono

12   in central file).  See Mt. Healthy City Bd. Of Educ. v. Doyle, 429 U.S. 274, 285-87 (1977).  The

13   fact that plaintiff was placed in ad seg following a finding of not guilty at the CDC 115 hearing,[4]

14   _____

15        [4] In his declaration submitted with his motion for summary judgment, which plaintiff
     incorporated herein by reference, plaintiff contends that both Fry and Herrera concede the CDC
16   115 report is false because they each responded to a request for admission by stating, "the
     document speaks for itself." (Dkt No. 78 at 11.)  However, Request for Admissions No. 29
17   states:

18            Admit that finding plaintiff "Not Guilty" at the CDC 115 hearing
             on June 20, 2005 . . . determined that defendant Hickison's
19            allegations against plaintiff were untrue.

20   (Dkt. No. 81 at 68 [Pl.'s 548].)  After objections, defendant Herrera's response was:

21            Defendant is without sufficient knowledge or readily obtainable
             information to either admit or deny this request, because he was
22            not present at, or personally involved in, the Rules Violation
             Report hearing.  Defendant refers plaintiff to the report for the
23            Rules Violation hearing that he attached to the Complaint and
             discovery requests, as the document speaks for itself.
     (Id.)
24
             The request posed to defendant Fry was verbatim of the request to Herrera. (Dkt.
25   No. 81 at 144 [Pl.'s 622-23].)  After objections, defendant Fry's response was verbatim to
     Herrera's.  (Dkt. No. 81 at 145 [Pl.'s 623].)  Therefore, these responses are not concessions that
26   either defendant agrees with plaintiff that the CDC 115 report is false.

1    and where no CDC 115 for fabricating allegations against Hickison was filed, raises an inference

2    that his placement in ad seg was retaliatory.

3            Defendants have produced evidence demonstrating that plaintiff's initial

4    placement in ad seg was based on California Code of Regulations, Title 15, § 3335, which

5    provides the guidelines for placing an inmate in ad seg.  (Herrera Decl. ¶ 3.)  Specifically,

6    § 3335(a) provides that

7            When an inmate's presence in an institution's general inmate
             population presents an immediate threat to the safety of the inmate
8            or others, endangers institution security or jeopardizes the integrity
             of an investigation of an alleged serious misconduct or criminal
9            activity, the inmate shall be immediately removed from general
             population and placed in administrative segregation.

10

11   Cal. Code Regs., tit. 15, § 3335(a).  Defendant Fry also determined that under California Code of

12   Regulations, Title 15, § 3335, plaintiff needed to be retained in ad seg pending ICC review.  Fry

13   also found plaintiff's retention was necessary because plaintiff's release to the general population

14   would jeopardize the integrity of the investigation into his allegation of staff misconduct, and to

15   protect the institution's safety and security.  (Fry Decl. ¶¶ 20, 21.)

16           "Maintaining the integrity of an investigation into serious institutional misconduct

17   is a legitimate penological interest."  Bryant v. Cortez, 536 F.Supp.2d 1160, 1169 (C.D. Cal.

18   2008); see also Draper v. Harris, 245 Fed. Appx. 699 (9th Cir. 2007).  The Ninth Circuit has

19   found that "preserving institutional order, discipline, and security are legitimate penological

20   goals."  Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994).

21           Because defendants have presented affirmative evidence negating an essential

22   element of plaintiff's claim, plaintiff as the nonmoving party "must do more than simply deny the

23   veracity of everything offered."  Matsushita., 475 U.S. at 586.  Thus, plaintiff's denial that

24   defendants acted in retaliation rather than in compliance with § 3335 is insufficient.  To avoid

25   summary judgment, plaintiff must "set forth specific facts showing that there is a genuine issue

26   for trial."  Fed. R. Civ. P. 56(e).  Mere conclusory allegations without more are insufficient to

support a § 1983 claim or withstand summary judgment.  See Ivey v. Board of Regents, 673 F.2d

266, 268 (9th Cir. 1984).  The prisoner must submit evidence, either direct or circumstantial, to

establish a link between the exercise of constitutional rights and the allegedly retaliatory action.

Pratt, 65 F.3d at 806.  Timing of the events surrounding the alleged retaliation may constitute

circumstantial evidence of retaliatory intent.  See Pratt, 65 F.3d at 808.

    Accordingly, the burden now shifts to plaintiff to demonstrate defendants acted in

retaliation rather than in compliance with § 3335.

    First, the court will address plaintiff's contention that he made no allegations of

misconduct against Hickison on June 20, 2005.  In his complaint, plaintiff states the following:

> On June 20, 2005, plaintiff was called into custody at CSP-Solano
> for a CDC 115 write-up, that he received from D. Hickison. . . .
> Plaintiff informed the hearing officer (J.A. Nuehring), the only
> reason plaintiff [was] receiving a CDC 115 write-up is he informed
> J. Rhoden that he is going to file a 602/Staff Complaint on D.
> Hickison.  The Hearing Officer proceeded in looking into the
> 602/Staff Complaint at plaintiff's CDC 115 Hearing.  The Hearing
> Officer proceeded to call plaintiff's witnesses into the hearing.

(Compl. at 8.)  The report from the June 20, 2005 CDC 115 hearing, (dkt. no. 1 at 18-21),

confirms plaintiff was claiming staff misconduct in the form of retaliation and sexual harassment

by Hickison:

> Requested Witness Testimony:  SHO noted the following
> questions posed to the requested witnesses by [plaintiff] leave
> ample questions as the role [plaintiff] played during this incident.
>
> Interviewed J. Rhoden, Clothing Distribution Supervisor asked him
> the following questions:
>
> . . .
>
> Q-4 Did [plaintiff] complain about Sexual and [Lewd]
>    comments from D. Hickison [on] different occasions?
>
> A-4 I made jokes with him about his Colonoscopy and Diane Hickison picked
>    up on it.
>
> Q-5 Because of these reports to you do you think it could be retaliation by
>    firing [plaintiff] from laundry Distributions?

1       A-5    No.

2       . . .

3       Interviewed Inmate Lancaster E-96955, 13-B1L, asked him the
        following questions:
4
        . . .
5
        Q-4    Did [plaintiff] give any reason to be targeted that morning for him to be
6              remove?

7       A-4    Yea, he went to our supervisor, Jeff and said she was sex playing him
               (plaintiff)
8
        SHO posed this question:  Q-1 Has your supervisor sexually
9       harassed you (Lancaster) in any way?

10             A-1  Yes, she has rubbed the back of my arm and
                    asked me how I was.
11

12   (Dkt. No. 1, at 18-20.)  Thus, although the rules violation report ("RVR") does not expressly

13   state that plaintiff informed the hearing officer about the CDC 602 grievance against Hickison,

14   plaintiff confirms he informed the hearing officer about the CDC 602 grievance and the hearing

15   officer looked into the CDC 602 grievance during the hearing.  (Compl. at 8.)  All of the above

16   confirms plaintiff raised allegations of misconduct by Hickison at the June 20, 2005 hearing.[5]

17           Second, plaintiff has adduced no evidence to contravene the legitimate

18   penological interest defendants had in confining plaintiff in ad seg pending investigation into

19   plaintiff's claims of staff misconduct.  The documentary evidence states plaintiff was placed in

20   ad seg pending the investigation.  Moreover, plaintiff's statement in his declaration concerning

21   Herrera's statements after dinner on June 20, 2005, supports defendants' position:

22           Herrera asked plaintiff is he was going to pursue his grievance
             (staff complaint) against Hickison to which he stated yes.  In
23           response, Herrera stated, "then by order of Captain Fry, you and

24   ───────────────

25       [5]  This does not mean that plaintiff raised new allegations of misconduct by Hickison at
     the June 20, 2005 hearing.  It simply means plaintiff informed the hearing officer about the
26   allegations raised in his May 31, 2005 grievance against Hickison, and also raised allegations of
     staff misconduct by his questions posed to witnesses at the June 20, 2005 hearing.

1    inmate Lancaster are being placed in administrative segregation."

2    (Dkt. No. 78 at 12 ¶ 24.)  If plaintiff had decided not to pursue his allegations of staff

3    misconduct, there would be no need for an investigation, and thus, there would be no need to

4    place plaintiff into ad seg pending that investigation.

5           However, because plaintiff was pressing claims of sexual misconduct against a

6    prison employee, defendant Hickison, it was reasonable for defendants to place plaintiff into ad

7    seg to protect plaintiff, if Hickison was harassing plaintiff, or, if plaintiff's allegations against

8    Hickison were false, to protect her from further contact with plaintiff.  Given the nature of the

9    charges, it was appropriate for defendants to place plaintiff into ad seg pending investigation into

10   those charges.  Plaintiff's placement in ad seg was not punitive, but was to protect the

11   investigation into serious charges of staff misconduct.  There is no evidence here that defendants

12   used ad seg "as a pretext for indefinite confinement."  See Hewitt v. Helms, 459 U.S. 460, 477

13   n.9 (1983).  Indeed, an investigation was performed, and it is undisputed that a subsequent ICC

14   hearing was held where the decision to place and retain plaintiff in ad seg was ratified and

15   confirmed.  (UDF 52-53, 57.)

16          Plaintiff must provide more than a scintilla of evidence that his confinement in ad

17   seg did not advance any legitimate penological goals.  Conclusory allegations will not suffice to

18   survive summary judgment.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Thus,

19   defendants are entitled to summary judgment on this claim.

20          Plaintiff's claim that his placement into ad seg on June 20, 2005, was retaliatory

21   because he was not placed in ad seg on June 2, 2005, when prison officials first received his

22   CDC 602 grievance against Hickison, also fails.  Plaintiff has adduced no evidence

23   demonstrating that either Fry or Herrera had notice of the initial 602 grievance.  Both Fry and

24   Herrera have provided declarations stating they first became aware of plaintiff's allegations of

25

26

1   staff misconduct on June 20, 2005, the date of the CDC 115 hearing.[6]

2          Plaintiff argues that because defendants are "custody," they were responsible to

3   know about Hickison's rules violation report against plaintiff, and plaintiff's grievance via the

4   CDC 602. (Dkt. No. 97-1 at 2.)  In his declaration, plaintiff contends Fry and Herrera can be

5   charged with notice and knowledge of the grievance because they based his ad seg placement on

6   the events of the CDC 115 hearing. (Dkt. No. 78 at 14.)  Plaintiff argues defendants "cannot

7   evade the causal nexus between their decision based on the hearing, which was based on the

8   report, which noticed the grievance." (Id. at 15.)  Plaintiff does state in his complaint that the

9   hearing officer advised Fry about the grievance.  Arguably, the substance of plaintiff's allegations

10  from the May 31, 2005 grievance were raised during the CDC 115 hearing.  But none of

11  plaintiff's arguments connect these defendants with the initial grievance, in light of their

12  declarations that they were unaware of plaintiff's allegations prior to June 20, 2005, or to the

13  failure of other prison employees to place plaintiff in ad seg immediately upon receipt of his

14  grievance against Hickison.

15         Plaintiff appears to argue that because "custody" received plaintiff's grievance,

16  defendants should have known about plaintiff's staff misconduct complaint prior to June 20,

17  2005.  Inferences are not drawn out of the air, and plaintiff must produce a factual predicate from

18  which the inference may be drawn.  See Richards, 602 F. Supp. at 1244-45.  Plaintiff has failed

19  to show either Fry or Herrera received a copy of the CDC 602 grievance or accessed it some

20  other way.  Review of the CDC 602 grievance and subsequent appeals reveals no involvement by

21  Fry or Herrera. (Dkt. No. 1 at 27-30; 33-37; see also Dkt. No. 78 at 9.)  It is undisputed that

22  neither defendant participated in any investigation regarding plaintiff's CDC 602 grievance

23  

24         [6] Plaintiff is correct that neither defendant expressly states how they became aware of the
    allegations of staff misconduct.  But in light of their declarations that they were unaware of
25  plaintiff's allegations prior to June 20, 2005, and plaintiff's failure to demonstrate they did know
    about the allegations prior to June 20, 2005, how each became aware of plaintiff's allegations is
26  not relevant here.

1  against Hickison because such investigations are handled by CSP-SOL's Investigative Service

2  Unit.  (Herrera Decl. ¶ 24.)

3         Plaintiff has failed to provide a regulation that demonstrates Fry and Herrera, in

4  their professional capacity, were required to "be aware" of all grievances alleging staff

5  misconduct.  But even assuming, arguendo, these defendants "should have known," such an

6  allegation is insufficient to demonstrate that they retaliated against plaintiff, particularly where

7  plaintiff has failed to demonstrate they were actually aware of the May 31, 2005 grievance.

8         Because plaintiff has failed to demonstrate Fry or Herrera knew plaintiff filed a

9  CDC 602 grievance against Hickison prior to June 20, 2005, plaintiff cannot show a causal

10  connection between his filing of the CDC 602 grievance and the failure of other prison staff to

11  put plaintiff in ad seg upon receipt of the grievance against Hickison.  See Pratt, 65 F.3d at 807.

12  Thus, defendants are entitled to summary judgment on this claim.

13         Plaintiff argues prison officials have discretion whether to abide by § 3335.

14  However, the actual language of § 3335(a) is mandatory:  "the  inmate shall be immediately

15  removed."  Id. (emphasis added).  Even assuming, arguendo, defendants had discretion, plaintiff

16  has submitted no evidence demonstrating the mere act of following § 3335 demonstrates

17  retaliation by defendants under these circumstances.  Maintaining an investigation's integrity is a

18  legitimate penological interest.  Collier v. Brown, 635 F.Supp.2d 1144, 1161 (C.D. Cal. 2009).

19  Plaintiff has also failed to provide evidence that defendants' adherence to § 3335 on June 20,

20  2005, or June 21, 2005, did not reasonably advance a legitimate correctional goal.

21                     August 12, 2005 Chrono

22         The court turns now to plaintiff's claim that Fry retaliated against plaintiff by

23  placing a negative chrono into plaintiff's central file on August 12, 2005, even though no charges

24  were filed against plaintiff.  (Compl. at 12.)  Plaintiff was retained in ad seg after it was

25  determined that his allegations against defendant Hickison were false.  The August 12, 2005,

26  chrono apparently remains in his central file.

1    In denying defendant's motion to dismiss on this claim, the court stated:

2    According to the chrono, plaintiff's false allegations against
     defendant Hickison were serious enough to warrant his transfer to
3    another prison yet no disciplinary charges were filed because there
     was insufficient information to support a finding of guilt in a
4    disciplinary hearing.  The court is puzzled that plaintiff was not
     charged with making false charges against defendant Hickison,
5    particularly since these "actions negatively affected an employee's
     work assignment and the institution's ability to provide routine
6    services to the inmate population by that unit."  In addition, "if
     successful, [the] false allegations could have resulted in the
7    employee's termination of employment."  These circumstances as
     well as the not guilty finding at the disciplinary hearing discussed
8    above suggest that plaintiff's placement in ad seg and transfer were
     made for reasons other than to advance legitimate correctional
9    goals.  Plaintiff has pled sufficient facts to support his retaliation
     claims against defendant Herrera and Fry. . . .

10

11   (June 2, 2008 Findings and Recommendations at 11.)

12         Defendant Fry declares that in preparing the chrono, she relied on CDC 114-D,

13   plaintiff's central file, disciplinaries and confidential material, as permitted under California

14   Code of Regulations, Title 15, § 3321.  (Fry Decl. ¶ 38-39.)  Fry provides a copy of the CDC

15   1030, "Confidential Information Disclosure Form," which indicates plaintiff:

16         was identified by a confidential source as making false allegations
           of staff misconduct, during the month of July 2005, while housed
17         in Administrative Segregation in cell 9-231-L.

18   (Ex. D, Fry Decl.)  The "Reliability of Source" portion of the form states "Information received

19   was corroborated through investigation."  (Id.)  The form was based on a "confidential memo

20   dated August 5, 2005 authored by Correctional Officer McGriff located in the confidential

21   section of [plaintiff's] central file."  (Id.)  McGriff signed and dated the form on August 8, 2005.

22   (Id.)  Fry declares she decided not to file a CDC 115 against plaintiff for making false allegations

23   against Hickison

24         because based on [her] correctional experience and knowledge, it would be
           difficult to demonstrate beyond a preponderance of the evidence that [plaintiff]
25         knowingly falsified allegations against [Hickison], as would have been required to
           substantiate disciplinary charges against [plaintiff], as opposed to [plaintiff's]
26         subjective perception of the situation.

26

1   (Fry Decl. ¶ 42.)  Fry confirms she "conducted a case conference with [his] supervisor, Acting

2   Deputy Chief Warden Johns, to obtain his input" as to whether a CDC 115 should be filed.  (Id.,

3   ¶ 43.)

4           Plaintiff utterly fails to address this issue in his opposition to the motion.  (Dkt.

5   No. 97, *passim*.)  In his declaration, plaintiff contends that Fry's failure to issue a CDC 115 or to

6   refer the matter for criminal prosecution is "evidence that plaintiff's grievance was true."  (Dkt.

7   78 at ¶ 29.)  Plaintiff cites as evidence "Exhibit 1, p. 39(d)" to his complaint.  However, the

8   exhibits to plaintiff's complaint use letters rather than numbers, and plaintiff failed to serially

9   number the pages of his complaint.  Page 39 is a copy of Fry's August 12, 2005 informational

10  chrono.  Plaintiff also cites as evidence the August 12, 2005 CDC 114-D Administrative

11  Segregation Unit Placement Order.  (Dkt. No. 80 at 147-48.)

12          Additionally, plaintiff attempts to reference discovery in support of his assertion.

13  However, plaintiff's citation to Exhibits 21, 28 & 34 are copies of his requests for admissions

14  directed to Fry.  Although plaintiff cites particular page numbers, there are no responses

15  contained therein; nor does plaintiff identify a particular request.

16          Plaintiff also cites all of Fry's responses to his request for production of

17  documents.  (Dkt. No. 81-1 at 94-104.)  In addition to Fry's objections, this exhibit includes

18  copies of the June 20, 2005 RVR, plaintiff's May 31, 2005 grievance against Hickison, the June

19  20, 2005 CDC-114-D signed by Herrera and Fry, a pre-ad seg admission medical report dated

20  June 20, 2005, the CDC 128-G form "Retain ASU Pending Investigation," dated June 23, 2005,

21  the CDC 114-D form signed August 12, 2005; and plaintiff's May 31, 2005 CDC 602 appeal and

22  subsequent review rulings thereon.  (Dkt. No. 81-1 at 104-29.)

23          Finally, plaintiff cites to Fry's response to request for admission No. 67.  (Dkt.

24  No. 81-1 at 163.)

25          REQUEST:  Admit that the document(s) attached hereto as exhibit
        9 are true and correct copies of CDC 114D administrative
26      segregation notice for [plaintiff] dated August 12, 2005, and said

1      document(s) is entitled to be admitted in evidence herein pursuant
       to Rule 803(6) Federal Rules of Evidence.

2
       OBJECTION AND RESPONSE:  Defendant objects to this request
3      on the grounds that it is compound.  Without waiving said
       objections, defendant admits, on information and belief, that
4      Exhibit 9 appears to be a copy of a CDC 114 form and a chrono
       regarding plaintiff's placement in administrative segregation.
5      Except as expressly admitted, this request is denied.

6   Id.

7          Plaintiff fails, however, to explain how any of the exhibits or discovery responses

8   he references support his theory that Fry issued the August 12, 2005 chrono in retaliation for

9   plaintiff's allegations against Hickison.  As explained above, plaintiff may not rely solely on

10  inferences to oppose a motion for summary judgment.  Plaintiff must provide specific facts or

11  evidence that demonstrate, at a minimum, that there is a material fact in dispute requiring a jury

12  trial.  Plaintiff claims that the "standard for finding prisoners guilty of a rules violation is

13  extremely lax."  (Dkt. No. 97-1 at 4.)  Plaintiff has provided no evidence to support this

14  conclusory statement.  Thus, plaintiff has failed to rebut Fry's evidence that the chrono was based

15  on her investigation, her review of the CDC 114-D, plaintiff's central file, disciplinaries and

16  confidential material.

17         It is undisputed that on August 12, 2005, Lieutenant Parks completed a CDC

18  114-D regarding plaintiff, it stated that the investigation confirmed plaintiff's allegations were

19  completely fabricated, but insufficient information was gathered to support a finding of guilt in a

20  disciplinary hearing.  (Fry Decl., ¶¶ 44-45, Ex. E; Dkt. No. 97-1 at 4.)  It is also undisputed that

21  the CDC 114-D also noted Hickison had appropriately continued to work in her assignment at the

22  Level II Clothing Distribution, and therefore, plaintiff's release to the general population at

23  CSP-SOL jeopardized her welfare.  (Fry Decl. ¶ 46; Dkt. No. 97-1 at 4.)  Based on this finding,

24  plaintiff was being retained in ad seg and would remain at "Maximum" custody status until his

25  transfer to an alternate institution.  (Id.)

26         Plaintiff also states, in conclusory fashion, that in her review of the CDC 114-D,

Fry falsely determined plaintiff was a danger. (Dkt. No. 97-1 at 4.)  It appears plaintiff bases this statement on the fact he was not immediately placed in ad seg when prison officials received his grievance on June 2, 2005.  However, as noted above, plaintiff failed to demonstrate defendant Fry was aware of plaintiff's May 31, 2005 grievance until June 20, 2005.  Because plaintiff has failed to demonstrate Fry was aware of the May 31, 2005 grievance, he cannot fault Fry for failing to place plaintiff in ad seg on June 2, 2005.  Moreover, just because plaintiff, in hindsight, posed no danger while he was not in ad seg from May 31, 2005 to June 19, 2005, does not mean plaintiff would not pose a danger to Hickison once prison officials determined his allegations against Hickison were false.

In addition, it is undisputed that the ICC convened for program review on August 17, 2005, with Fry and 5 other prison officials presiding, and plaintiff in attendance. (Fry Decl. ¶¶ 49-51; Dkt. No. 97-1 at 5.)  It is undisputed that the August 12, 2005 CDC 114-D recommended plaintiff's retention in ad seg pending transfer in order to ensure staff safety. (Fry Decl. ¶ 53; Dkt. No. 97-1 at 5.)  Plaintiff claims that "the ICC's decision was based on false information." (Dkt. No. 97-1 at 5.)  However, plaintiff provides no citation to facts or evidence he alleges supports this conclusory statement.

Finally, it is undisputed that the ICC's decisions at the June 23, 2005 and August 17, 2005 hearings were collectively made, that Fry did not have authority to decide the committee's recommendations and actions, and that the Chairperson (not Fry) had the authority to make a final decision if the ICC members disagreed on the recommendations and actions. (Fry Decl. ¶¶ 63, 65 & 66; Dkt. No. 97-1 at 5.)  It appears from the documentary evidence that the ICC ratified the information gathered from the investigation and came to the same conclusion contained in the August 12, 2005 chrono.

Plaintiff has again failed to provide admissible evidence suggesting Fry's issuance of the August 12, 2005 informational chrono was retaliatory or based on false information.  Thus, defendant Fry is entitled to summary judgment on this claim as well.

1          The court has also reviewed the record as a whole in an effort to determine

2    whether the timing of events here provide sufficient circumstantial evidence to raise a dispute of

3    material fact as to whether the actions of Fry or Herrera were motivated by retaliation.  Unlike

4    Hines, where Hines recounted numerous facts from which an inference of retaliation could be

5    raised, plaintiff has failed to point to any facts from which an inference could be raised that

6    demonstrate Fry or Herrera acted in retaliation.  See Hines, 108 F.3d at 268.  This court finds that

7    timing, without more, fails to suggest either defendant was motivated by retaliation for the filing

8    of the CDC 602 grievance.  This determination is particularly true in light of the legitimate

9    penological reason for the placement of plaintiff in ad seg on June 20, 2005.

10         Plaintiff fails to submit evidence upon which a reasonable jury could rely to

11   conclude that either Herrera or Fry's decisions here were motivated by retaliation and the

12   speculation plaintiff offers is insufficient to withstand summary judgment.  Both defendants Fry

13   and Herrera are entitled to summary judgment on all of plaintiff's claims.

14   IV.  Plaintiff's Motion for Summary Judgment

15         Because the court recommends the motion for summary judgment brought by

16   defendants Herrera and Fry be granted, the court need not address plaintiff's motion for summary

17   judgment as to defendants Fry and Herrera.  In light of the above recommendations, the court

18   will recommend that plaintiff's motion as to these two defendants be denied.

19         The court turns now to plaintiff's motion for summary judgment as to defendant

20   Hickison.  The same summary judgment standards as set forth above apply and will not be

21   repeated here.

22         In his motion, plaintiff argues that Hickison has failed to provide an explanation

23   for her actions.  (Dkt. No. 75 at 3.)  Plaintiff claims he complained to J. Rhoden about Hickison's

24   alleged sexual misconduct from January 2005 to May 2005.  Plaintiff argues that Hickison "has

25   admitted that the documents of the CDC 115 report and the CDC 115 hearing speak for

26   themselves."  (Id.)  Plaintiff contends that because he was found not guilty on the CDC 115, that

1   demonstrates the CDC 115 was false.[7]

2        <u>Undisputed Facts</u>

3        1.  Plaintiff is proceeding without counsel in the instant action.

4        2.  Plaintiff is indigent and is not a licensed attorney.

5        3.  Plaintiff is a California state prisoner, currently confined at Folsom State

6   Prison.

7        4.  From about June 2004 to about November 2005, plaintiff was confined at

8   Solano Prison.

9        5.  From about July 2004 to May 24, 2005, plaintiff was employed in the Solano

10  Prison yard 3 laundry room.

11       6.  At all times material to this action, Hickison was employed by CDCR.

12       7.  At all times material to this action, J. Rhoden was Hickison's supervisor.

13       8.  On May 25, 2005, Hickison wrote a CDC 115 rules violation report ("CDC

14  115") against plaintiff for an alleged incident on May 24, 2005.  Hickison claimed plaintiff was

15  "disruptive to the work place" and requested that plaintiff be removed from his work assignment.

16       9.  On May 31, 2005, plaintiff filed a grievance against Hickison.

17       10.  On June 20, 2005, a hearing was conducted on the CDC 115 authored by

18  Hickison.  The findings from the June 20, 2005 hearing were as follows:

19  ////

---

20      [7]  In his reply, plaintiff states "[d]efendants cannot now complain that their very own

21  discovery responses are 'vague, lacks foundation, and is conclusory and speculative.'"  (Dkt. No.
    101 at 2.)  Plaintiff refers to Defendants' Response to Plaintiff's "Separate Statement of

22  Undisputed Facts in Support of Motion for Summary Judgment. . . ."  (Dkt. No. 98-2.)  However,
    it appears plaintiff misunderstands defendants' statement.  Defendants included this statement in

23  the column containing their explanation for why they dispute plaintiff's allegedly undisputed
    statement.  For example, plaintiff claimed the following statement is undisputed:  "Hickison

24  conceded these facts by admitting that, 'the Rules Violation Report [CDC 115 hearing
    transcripts] speaks for itself.'"  (Dkt. No. 98-2 at 4-5.)  Defendants objected to that statement,

25  claiming that statement is "vague, lacks foundation, and is conclusory and speculative."  (<u>Id.</u>)
        Moreover, it does not appear either party has submitted a transcript of the CDC 115

26  hearing, and the RVR does not suggest the hearing was transcribed.

1
    [Plaintiff] was Not Guilty of the specific act of:  DISRUPTIVE
    BEHAVIOR, based on the lack of preponderance of evidence
2
    presented and which needed to be relied upon at the hearing.

3   (Dkt. No. 1 at 21.)

4       11.  Plaintiff concedes he is not entitled to damages for emotional or mental

5   distress.  (Dkt. No. 97 at 4.)

6       12.  Plaintiff was placed in ad seg on June 20, 2005 (Herrera Decl. ¶ 10), and was

7   retained in ad seg on June 21, 2005, after Fry's review.  (Fry Decl. ¶¶ 20, 21, 46; Ex. A.)

8   Plaintiff was again retained in ad seg after the ICC hearing on June 23, 2005 at "Maximum"

9   custody status until his transfer to another institution could be arranged.  (Fry Decl. ¶ 37; Exs. B

10  & E.)

11      13.  Plaintiff lost his job in the laundry and was transferred to another institution.

12      <u>Disputed Facts</u>

13      1.  Whether on or about January 15, 2005, at the Solano State Prison yard 3

14  laundry room, Hickison asked plaintiff "if it was hard to go without sex," and said "she couldn't

15  go without sex for very long."

16      2.  Whether plaintiff reported the January 15, 2005 incident to J. Rhoden, clothing

17  room supervisor.

18      3.  Whether J. Rhoden admitted, during the CDC 115 hearing, that plaintiff

19  reported the January 15, 2005 incident to J. Rhoden.

20      4.  Whether inmate Lancaster verified that plaintiff reported the January 15, 2005

21  incident to J. Rhoden.

22      5.  Whether, on or about February 15, 2005, at Solano State Prison yard 3 laundry

23  room, Hickison told plaintiff, in front of other inmates, that her sexual preference was for black

24  men.

25      6.  Whether the February 15, 2005 incident was reported by plaintiff to J. Rhoden.

26      7.  Whether J. Rhoden admitted, during the CDC 115 hearing, that plaintiff

reported the February 15, 2005 incident to J. Rhoden.

8. Whether inmate Lancaster verified that plaintiff reported the February 15, 2005 incident to J. Rhoden.

9. Whether, on or about March 15, 2005, at Solano State Prison yard 3 laundry room, Hickison asked plaintiff is he had ever "made it" with a heavy set woman, and, if he had, what he liked about it.

10. Whether J. Rhoden admitted, during the CDC 115 hearing, that plaintiff reported the March 15, 2005 incident to J. Rhoden.

11. Whether inmate Lancaster was present when plaintiff reported the March 15, 2005 incident to J. Rhoden.

12. Whether J. Rhoden admitted, during the CDC 115 hearing, that plaintiff reported the March 15, 2005 incident to J. Rhoden.

13. Whether inmate Lancaster verified that plaintiff reported the March 15, 2005 incident to J. Rhoden.

14. Whether, on or about April 15, 2005, at Solano State Prison yard 3 laundry room, Hickison came up behind plaintiff and started rubbing his back in a soothing manner.

15. Whether the April 15, 2005 incident was reported by plaintiff to J. Rhoden.

16. Whether J. Rhoden admitted, during the CDC hearing, that plaintiff reported the April 15, 2005 incident to J. Rhoden.

17. Whether inmate Lancaster verified that plaintiff reported the April 15, 2005 incident to J. Rhoden.

18. Whether, on or about May 18, 2005, at Solano State Prison yard 3 laundry room, Hickison asked plaintiff if he had gotten lube from the MTA for his ass for his upcoming colonoscopy, then laughed out loud.

19. Whether the May 18, 2005 incident was reported by plaintiff to J. Rhoden.

20. Whether J. Rhoden admitted, during the CDC hearing, that plaintiff reported

the May 18, 2005 incident to J. Rhoden.

21.  Whether inmate Lancaster verified that plaintiff reported the May 18, 2005 incident to J. Rhoden.

22.  Whether, on May 18, 2005, J. Rhoden informed Hickison that plaintiff was going to file a CDC 602 grievance against Hickison.

23.  Whether Hickison wrote a false CDC 115.

24.  Whether Hickison wrote the CDC 115 in retaliation.

Retaliation Claim Against Defendant Hickison

Plaintiff contends that defendant Hickison wrote a false CDC 115 against him and fired him from his job after he complained of her sexual misconduct to her supervisor, J. Rhoden. Both Hickison and J. Rhoden have provided declarations to the contrary.  Plaintiff argues that Hickison "concedes the report was false by stating 'the Rules Violation Report speaks for itself." (Dkt. No. 62 at 11.)  However, there is nothing in the CDC 115 that states or suggests Hickison concedes her report is false.  Plaintiff might argue that the CDC 115 demonstrates Hickison was only planning to send plaintiff home for the day until Rhoden informed her plaintiff was "going to put paperwork" on her which was false in nature, at which point she decided to fire plaintiff. (Dkt. No.1 at 23.)  However, Hickison has filed a declaration stating she "informed [plaintiff] that [she] was going to write a CDCR 128 and CDC 115 to have him unassigned from the clothing room, because of his disruptive behavior, refusal of a direct order, and creating an unsafe work place."  (Dkt. No. 98-3 at 3.)

Thus, there are material disputes of fact precluding entry of summary judgment in favor of plaintiff.  Plaintiff is not entitled to summary judgment on his retaliation claim as to defendant Hickison.

Eighth Amendment

The court has previously found that the complaint states a potential Eighth Amendment claim against defendant Hickison based on her alleged verbal sexual harassment of

1   plaintiff, as well as the allegation that Hickison touched plaintiff's arm and back.  (Dkt. No. 27 at

2   12-13.)

3          Defendants are correct that verbal sexual harassment of a prison inmate, without

4   more, does not violate the Eighth Amendment.  See Austin v. Terhune, 367 F.3d 1167, 1171 (9th

5   Cir. 2004) (internal citation omitted).  It is also established that physical sexual abuse of an

6   inmate violates the Eighth Amendment.  See Austin, 367 F.3d at 1171.  In the instant case, it is

7   disputed whether Hickison touched plaintiff.  Hickison contends that there was no touching.

8   Plaintiff contends there was touching.  This disputed fact is material and must be resolved by a

9   jury.

10         Defendants also contend that all Eighth Amendment claims by inmates arising out

11  of inappropriate physical contact require a showing of physical injury.  Defendants rely on

12  section 1997e(e) of Title 28 of the United States Code, which provides:

13         No federal civil action may be brought by a prisoner confined in a
           jail, prison, or other correctional facility, for mental or emotional

14         injury suffered while in custody without a prior showing of
           physical injury.

15

16  28 U.S.C. § 1997e(e).  Section 1997e(e) bars compensatory damages for a claimed mental or

17  emotional injury absent a showing of physical injury.  See Oliver v. Keller, 289 F.3d 623, 629

18  (9th Cir. 2002).  The section does not, however, bar claims for nominal and/or punitive damages

19  arising from alleged violations of an inmate's constitutional rights.  Id. at 629; see also Canell v.

20  Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998).

21         It is undisputed that plaintiff did not suffer more than de minimis physical injury

22  as a result of the alleged events of which plaintiff complains.  Therefore, plaintiff may not

23  recover compensatory damages for the alleged emotional and/or mental harm that he claims

24  followed from Hickison's alleged actions.  See Oliver, 289 F.3d at 629.  It is also clear, however,

25  that plaintiff has stated a potentially cognizable claim for violation of his Eighth Amendment

26  rights by alleged sexual harassment.  (See Findings and Recommendations filed June 2, 2008;

1   Order filed August 20, 2008.)  In his complaint, plaintiff seeks punitive damages for violation of

2   his Eighth Amendment rights, and his complaint "is consistent with a claim for nominal

3   damages" for the alleged Eighth Amendment violation.  Oliver, 289 F.3d at 630.  Section

4   1997e(e) does not preclude recovery of such damages on plaintiff's cognizable Eighth

5   Amendment claim.  Therefore, plaintiff's claim for emotional or mental distress damages should

6   be dismissed.[8]  But plaintiff's motion for summary judgment should be denied as there are

7   disputed issues of material fact that must be resolved by a jury.

8           Discovery

9           Finally, in plaintiff's reply to the opposition to his motion for summary judgment,

10  plaintiff objects that defendants not be allowed to oppose plaintiff's motion for summary

11  judgment because "the defendants now present facts in their undisputed facts and declarations

12  that were not disclosed during discovery."  (Dkt. No. 101 at 3.)  Plaintiff contends this is "[i]n

13  defiance of the court's June 12, 2009 order.

14          However, the pertinent portion of the June 12, 2009 order reads as follows:

15      *Requests for Admissions–Hickison*

16      Plaintiff objects to defendant Hickison's responses to request for
        admissions no. 25 which stated, "Admit that prior to May 25, 2005,
17      Plaintiff Morris was not issued any CDC 128B chrono's (for poor
        work performance) while assigned to the Solano Prison Clothing
18      distribution."  Defendant objected that the request was vague and
        ambiguous.  Without waiving objection, defendant Hickison
19      responded that following a reasonable inquiry, she was without
        sufficient knowledge to admit or deny this request because she is
20      not currently employed by the California Department of
        Corrections and Rehabilitation (CDCR) and lacks sufficient
21      personal knowledge or recollection regarding plaintiff's chronos or
        CDC 128 forms.
22
        Defendant Hickison's objection that she does not have sufficient
23

24          [8]   Although the court is not required to reach this issue herein because it is
        recommending that the motion for summary judgment brought by defendants Herrera and Fry be
25      granted, nevertheless it is appropriate to address this issue now because it was raised in
        defendants' motion and it would be a waste of judicial resources to require defendant Hickison to
26      file a motion on this single issue with the same result.

1        knowledge to admit or deny request for admission no. 25 because
      she is no longer employed by CDCR is valid.

2

3        The court notes, however, that defendant Hickison, and for that
      matter all defendants, will not be permitted to vary from their "I
      don't know" responses, i.e., they will not be permitted to "get

4        smart" just before motion filing or trial.  If they do not have
      personal knowledge sufficient to answer the requests now, it would

5        be a total abuse of the discovery process for these defendants to
      testify in terms of declarations or at trial to facts for which they

6        presently disclaim knowledge.

7  (Dkt. No. 63 at 5-6.)

8        Plaintiff submitted 717 pages of exhibits in support of his motion, which included

9  copies of discovery requests as well as discovery responses.  (Dkt. Nos. 91 & 92.)  Plaintiff,

10  however, has failed to pinpoint a particular discovery request to which a defendant responded "I

11  don't know," but then contradicted that response in response to the pending motion.  This court

12  is not required to sift through 717 pages of exhibits to determine whether such discovery

13  response exists.  <u>See</u> <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal citation

14  omitted) ([I]t is not the court's obligation "to scour the record in search of genuine issues of

15  triable fact.").  If plaintiff wishes to produce evidence of such contradiction at trial, he must

16  produce the actual discovery request and response that he alleges violates the June 12, 2009

17  order.  Because the response includes the request, plaintiff does not need to separately provide

18  his request.

19        Plaintiff also claims that Hickison is now adding information that she failed to

20  disclose through discovery.  (Dkt. 101 at 4 "This is rebutted by her absolute silence up until

21  now.")  Plaintiff also claims Hickison "suddenly remembers" facts not disclosed through

22  discovery.  (Id. at 4-5.)  However, plaintiff has failed to demonstrate that he propounded

23  discovery that would elicit the facts he now claims she is first remembering.  If plaintiff can

24  demonstrate a specific discovery request where Hickison responded "I don't know," but should

25  have responded with facts she is claiming now, the court can address that contradiction at that

26  time.  But plaintiff is cautioned that it must be a direct factual contradiction rather than an

1    inference or an argument based on the facts.[9]

2          If plaintiff can produce specific evidence of such factual contradiction, he should

3    provide it in an appropriate motion in limine.  A further scheduling order will issue, if

4    appropriate, after the district court addresses the instant findings and recommendations.  That

5    order will address the time period for filing motions in limine, and plaintiff should not file such a

6    motion until the time prescribed by the scheduling order.

7    V.  Qualified Immunity

8          Because the court finds defendants Fry and Herrera are entitled to summary

9    judgment, it need not reach the issue of qualified immunity.

10   VI.  Conclusion

11         For all of the above reasons, IT IS HEREBY RECOMMENDED that:

12         1.  The motion for summary judgment filed by defendants Fry and Herrera be

13   granted.  (Dkt. No. 93.)

14         2.  Plaintiff's motion for summary judgment be denied.  (Dkt. No. 75.)

15         3.   Plaintiff's claim for emotional or mental distress damages be dismissed.

16         4.  This action shall proceed solely on plaintiff's retaliation and Eighth

17   Amendment claims against defendant Hickison.

18         5.  This case be referred back to the magistrate judge for further orders.

19         These findings and recommendations are submitted to the United States District

20   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

21   one days after being served with these findings and recommendations, any party may file written

22   objections with the court and serve a copy on all parties.  Such a document should be captioned

23   _____

24        [9]  For example, plaintiff's statement that Hickison's claim she did not retaliate against
     plaintiff is rebutted by her discovery responses that the "documents speak for themselves,"
     because the documents "say that she wrote a false rules violation report against plaintiff because
25   he made grievances to J. Rhoden about her misconduct," is simply not true.  The documentary
     evidence contains no such statement.  Whether plaintiff wishes to argue that the documentary
26   evidence raises an inference that the report is false is completely different.

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

2  objections shall be filed and served within fourteen days after service of the objections.  The

3  parties are advised that failure to file objections within the specified time may waive the right to

4  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5  DATED:   July 29, 2010

6

7

8                                                                   _____

9                                                                   KENDALL J. NEWMAN
                                                                     UNITED STATES MAGISTRATE JUDGE

10  morr2936.msj

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26